(Nos. 52818, 52828, 52903 cons.—

CATERPILLAR TRACTOR CO. *et al.*, Appellants and Cross-Appellees, v. DANIEL J. LENCKOS, Director of Revenue, *et al.*, Appellants and Cross-Appellees.

*Opinion filed February 20, 1981.—Rehearing denied March 27, 1981.*

104

SIMON, J., took no part.

Emroy S. Naylor, Jr., Don S. Harnack and Richard A. Hanson, of Chicago (McDermott, Will & Emery, of counsel), for appellants and cross-appellees Caterpillar Tractor Co. *et al.*

William P. Sutter and Richard Bromley, of Chicago

(Hopkins, Sutter, Mulroy, Davis & Cromartie, of counsel), for appellants and cross-appellees Coca-Cola Company *et al.*

William J. Scott, Attorney General, of Springfield (John D. WhiteNack and Lloyd B. Foster, Special Assistant Attorneys General, of Chicago, of counsel), for the Director of the Department of Revenue *et al.*

Frank M. Keesling, of Loeb & Loeb, of Los Angeles, California, *amicus curiae.*

Edward C. Rustigan, David K. Staub, and Martin G. Rosenstein, of Chicago (Mayer, Brown & Platt, of counsel), for *amici curiae* Continental Illinois National Bank & Trust Co. *et al.*

William D. Dexter, of Olympia, Washington, *pro se, amicus curiae.*

MR. JUSTICE WARD delivered the opinion of the court:

The plaintiffs, Caterpillar Tractor Company and four of its corporate subsidiaries, filed separate Illinois corporate income tax returns for 1969 through 1974 inclusive. Each corporation, whose business income is generated through multistate and multinational business operations, in preparing its return applied the apportionment formula set out in section 304(a) of the Illinois Income Tax Act (Ill. Rev. Stat. 1969, ch. 120, par. 3—304(a)) for the use of corporations deriving business income from transactions in Illinois and in one or more other States. A purpose of the apportionment formula is to confine taxation to the portion of corporate income attributable to business operations within Illinois.

Under section 304(a), the Director of Revenue (Director) applies a three-factor (sales, payroll and property) apportionment formula which separately com-

pares the total value of a corporation's in-State and out-of-State sales, payroll, and property, both tangible and intangible, with the total value of the corporation's in-State sales, payroll, and property alone. To illustrate: if the total multistate sales of a corporation are $10 million and its total Illinois sales are $1 million, the Illinois sales would represent one-tenth of the total multistate sales of the corporation, giving a sales factor of 10%. Once the percentage of the other factors, payroll and property, is calculated, the three factors are averaged. This average is then multiplied by the total amount of business income generated by the corporation's in-State and out-of-State operations. If, for example, the sales, payroll and property multistate factors of the corporation are each 10% and its combined business income is $20 million, the amount of business income attributable to Illinois is $2 million.

This method of apportionment was applied by each of the plaintiff corporations in order to determine the portion of income upon which Illinois could properly impose its corporate income tax. (Ill. Rev. Stat. 1969, ch. 120, par. 2—201(b)(2).) The Illinois tax paid by the five corporations for the six years in question totaled $37,238,681.60. The separate returns filed by each of the plaintiffs showed deductions claimed for taxes paid to foreign governments in other countries which had been credited for Federal income tax purposes. The plaintiffs also deducted certain dividend income includable in Federal taxable income (26 U.S.C. sec. 78 (1976)) as well as income obtained under subpart F of the Internal Revenue Code. 26 U.S.C. secs. 951 through 964 (1976).

Between February of 1974 and May of 1976, each of the plaintiffs filed separate claims with the Director for refunds covering 1969 through 1974. They claimed that for the period of 1970-74, by using separate apportionment they misapplied the apportionment formula of section 304(a) and, instead, should have applied the

unitary method of apportionment when calculating the percentage of each plaintiff's business income attributable to operations within Illinois. Because of this misapplication, or failure to apply the unitary method, the plaintiffs claimed that each of them paid a greater tax than it was liable for under the Illinois Income Tax Act.

The unitary apportionment method or as it is described in the case of a group of commonly owned and controlled corporations, the combined reporting method of reporting the income of the plaintiffs from what are literally worldwide sources, should have been applied, the plaintiffs said, since they qualified as a unitary business group. A unitary business operation is one in which there is a high degree of interrelationship and interdependence between, typically, one corporation, which generally is a parent corporation, and its corporate subsidiaries or otherwise associated corporations, which group is usually engaged in multistate, and in some cases in international, business operations. Because of this integrated relationship, which is reflected in all phases of the business operations, it is extremely difficult, for purposes of taxation, to determine accurately the measure of taxable income generated within a State by an individual corporation of the unitary group which is conducting business in the State. Typically, the corporation's transactions and the income derived from them actually represent the business efforts of the individual corporation, plus efforts of other and possibly all members of the unitary business operation. As a result, the claimed income of each member of the group standing alone does not, in a real sense, reflect the conducting of a unitary business operation because the income is not attributable solely to the effort of the particular corporation.

The plaintiffs in their separately filed claims for refunds maintained that, in order to fairly measure the taxable business income of each unitary member, a unitary

method of apportionment should have been applied. They argued that under this formula, which they asserted was authorized under section 304(a) of the Illinois Income Tax Act, each corporation's in-State, *i.e.,* Illinois, data for its property, payroll and sales should have been compared with the combined worldwide totals of the entire unitary group, which included the plaintiffs and 21 other corporate subsidiaries of Caterpillar Tractor. The plaintiffs, in their State returns, compared only the in-State totals of each corporation with the in-State and out-of-State totals for property, payroll and sales of the same corporation and not of the unitary business group.

The plaintiffs argued that the unitary method of apportionment should be applied for each of the plaintiffs for the years 1970 through 1974 but not as to 1969. The basis for excluding 1969 was the contention that the unitary method of reporting did not accurately reflect the amount of taxable income for that year since the Illinois Income Tax Act did not take effect until August of 1969 (Ill. Rev. Stat. 1969, ch. 120, par. 1—101 *et seq.*). The proposed application by the plaintiffs of the unitary method of apportionment, and the claimed deductions for dividend income, subpart F income, and foreign income taxes paid, were denied by the Director. Timely protests were filed by the plaintiffs.

At the later administrative hearing, the plaintiffs introduced extensive evidence showing a strong integrated relationship between Caterpillar Tractor, the parent corporation, and its multistate and multinational subsidiaries. Based on this and on a strict policy of Caterpillar Tractor to maintain worldwide uniformity in all phases of its operations, including production, marketing and employer-employee relationships, all of which were kept subject to the central control of the parent corporation, the plaintiffs contended that they should be considered members of a unitary business group. The Director agreed

and then applied a unitary apportionment formula under section 304 of the Illinois Income Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 3—304), using the combined worldwide business income of Caterpillar Tractor and its 25 subsidiaries in order to determine the appropriate percentage of business income attributable to Illinois for each corporate plaintiff for all six years in question, 1969 through 1974. The Director, however, denied the deductions claimed for the foreign income taxes, the deemed dividend income and the subpart F income.

The plaintiffs appealed to the circuit court of Peoria County (Ill. Rev. Stat. 1977, ch. 120, par. 12—1201) on the ground that unitary apportionment should not have been applied to their 1969 taxable income and on the ground that the Director erred in denying the various deductions claimed. The circuit court allowed the petitions of 16 corporations, including the Coca Cola Company, to intervene, but limited intervention to the issue of whether unitary apportionment is authorized under the Illinois Income Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 1—101 et seq.).

The circuit court subsequently held that combined reporting was authorized in Illinois and affirmed the Director's decision to combine the worldwide income of Caterpillar Tractor and its 25 subsidiaries for purposes of apportioning each plaintiff's Illinois taxable income for 1970 through 1974. With respect to 1969, it held that the unitary method of apportionment was, in general, inapplicable. The court held also that the plaintiffs could claim as deductions dividend income, subpart F income, and also foreign income taxes paid by domestic subsidiaries, as well as foreign income taxes paid by foreign subsidiaries.

The appellate court, on appeals by the plaintiffs, the Director, and the intervenors, affirmed the judgment as to the application of the unitary method for 1970-74 but held that the unitary method of apportionment was appli-

cable for 1969. (77 Ill. App. 3d 90, 101.) The court affirmed also the allowance of the petitions to intervene. It, however, also reversed the circuit court's allowance of the deductions claimed by the plaintiffs. We granted and consolidated petitions for leave to appeal filed by the plaintiffs, the Director and the intervenors and allowed the filing of a number of *amicus curiae* briefs. The plaintiffs did not seek an appeal from the holding that the unitary method was to be applied to 1969. They did not seek an appeal either from the appellate courts adverse holding as to deducting dividend income and subpart F income.

We first address the issue of whether the trial court erred, as the Director contends, in permitting the petitions to intervene. The question of when a third party may intervene is governed by section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 26.1). This section provides that a party may intervene as a matter of right: "(a) when a statute confers an unconditional right to intervene; or (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (c) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property ***." (Ill. Rev. Stat. 1979, ch. 110, par. 26.1(1).) In the alternative, the court in its discretion may permit intervention: "(a) when a statute confers a conditional right to intervene; or (b) when an applicant's claim or defense and the main action have a question of law or fact in common." Ill. Rev. Stat. 1977, ch. 110, par. 26.1(2).

The circuit court, in permitting intervention, stated it was being allowed as a matter of right and as a matter of discretion. It refused, however, to address the question of whether the intervenors were to be deemed to be conducting unitary business operations.

The overall design of section 26.1 of the Civil Practice

Act was to liberalize the practice of intervention so as to avoid, upon timely application, the relitigation of issues in a second suit which were being litigated in a pending action. (See *Dowsett v. City of East Moline* (1956), 8 Ill. 2d 560; Ill. Ann. Stat., ch. 110, par. 26.1, Joint Committee Comments, at 317-18 (Smith-Hurd (1968).) A party need not have a direct interest in the pending suit but it must have an interest greater than that of the general public (see *Mensik v. Smith* (1960), 18 Ill. 2d 572, 590; *Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 270), so that the party may stand to gain or lose by the direct legal operation and effect of a judgment in the suit. *In re Appointment of Special State's Attorneys* (1976), 42 Ill. App. 3d 176, 181.

In their petitions for intervention (Ill. Rev. Stat. 1977, ch. 110, par. 26.1(1)) before the circuit court, Coca Cola and the 15 other corporate intervenors maintained that the plaintiffs' representation on the issue of whether the Director may require the unitary method of apportionment as a means to determine business income allocable to Illinois as stated above would be inadequate, since the plaintiff only challenged its use for the tax year 1969 and not for the years 1970 through 1974. The intervenors argue that the plaintiffs have not raised on appeal any issue as to 1969, thus making the necessity of intervention more urgent. The intervenors currently are engaged in a similar dispute with the Director as to whether the Director may determine their liability for income tax using the combined income of their corporate branches and subsidiaries or whether it must calculate the tax, as the intervenors claim, based on separate corporate returns. They also say that this appeal and the intervenors' dispute before the Director involve a common question of law, *i.e.*, whether combined reporting is even authorized under the Illinois Income Tax Act.

The Director contends that the intervenors' position

may be fully protected by their appearance as *amici curiae* and that intervention in this instance was improper. The Director argues that the intervenors, in actuality, are seeking a declaratory judgment as to their rights under the Illinois Income Tax Act, which may not be granted unless they can establish a right to injunctive relief. This relief, the Director contends, citing *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358-59, overruling *Owens-Illinois Glass Co. v. McKibbin* (1943), 385 Ill. 245, which had provided an exception in equity to the exhaustion rule, is not permitted in a tax case unless a party has exhausted its administrative remedies or has shown special circumstances to avoid this requirement. The Director also maintains that the protest act (Ill. Rev. Stat. 1979, ch. 127, par. 172) provides a means to contest the Director's position regarding the application of the unitary apportionment method under the Illinois Income Tax Act without the necessity of exhausting administrative remedies. The Director says, too, that the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1977, ch. 127, par. 1001 *et seq.*) does not allow intervention at the administrative level since to do so would permit a taxpayer to circumvent the protest act.

We do not consider the intervenors to be seeking a declaratory judgment. The declared purpose of the intervention is to raise the questions of whether a unitary method of apportionment is authorized and whether it may be required. The resolution of these issues will not necessarily decide the intervenors' disputes with the Director regarding claimed tax deficiencies. Furthermore, were this court to hold that unitary apportionment is authorized under the Illinois Income Tax Act, that holding would not decide whether each of the 16 corporations may properly be regarded as a unitary business group so that this method of apportionment might be applied. The contention of the Director that to permit intervention

here would open an avenue for taxpayers to "evade" the tax protest act does not persuade. Intervention under section 26.1 of the Civil Practice Act is not granted as a matter of course. Where one has satisfied the burden to intervene as a matter of right or where a court has not abused discretion in allowing intervention there should be no artibrary denial of it. (See *L. S. Health & Sons, Inc. v. Marathon Oil Co.* (1977), 56 Ill. App. 3d 440.) The circuit court did not abuse discretion when it granted the petition for intervention. We need not decide if intervention was to be allowed as a matter of right. See *Mensik v. Smith* (1960), 18 Ill. 2d 572; *Standard Bank & Trust Co. v. Village of Oak Lawn* (1978), 61 Ill. App. 3d 174.

We consider now the question the intervenors raise as to whether the provisions of the Illinois Income Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 1—101 *et seq.*) authorize the Director to use the unitary apportionment or combined method of reporting business income for Illinois income tax purposes. The Illinois Income Tax Act became effective on August 1, 1969, and was held constitutional by this court in *Thorpe v. Mahin* (1969), 43 Ill. 2d 36. The plaintiffs filed income tax returns for the years 1969 through 1974 and, as stated above, they later filed separate claims for refunds for almost $11,000,000 covering this six-year period. It was the Director's agreeing with the plaintiffs that Caterpillar Tractor and all of its subsidiaries should be considered a unitary business group and further that the combined method of apportionment should be applied in order to determine the percentage of income attributable to Illinois activities for each corporate plaintiff that led the intervenors to seek to enter the case. They sought to present their contention that the Illinois Income Tax Act does not provide for reporting as a member of a unitary business group and authorizes only the reporting of the separate taxable income of a corporation through returns filed under section 203(d)(2)(E) of the Illinois

Income Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 2–203(d)(2)(E)). This section provides that where "a member of an affiliated group of corporations [files] a consolidated income tax return for the taxable year for federal income tax purposes ***," the Director shall determine taxable income "as if such corporation had filed a separate return for federal income tax purposes for the taxable year and each preceding taxable year for which it was a member of an affiliated group." They erroneously claim that this section shows a legislative intent to bar the unitary or combined reporting method.

There are two basic methods of accounting used by State tax officials to determine net taxable income in such a way as to avoid the constitutional problems which arise when a State attempts to tax that portion of a corporation's business income which clearly has been earned in other States or countries. The first method, called separate accounting, attempts to segregate and identify the sources or transactions which account for the generation of business income. This attempt to isolate the income-producing sources becomes extremely complex in the case of business transactions where members of a unitary business group located in different States, and even countries, contributed to the completion of the business transaction. Even where a unitary operation has attempted to identify and separate the contributions of each member to the completed transaction and the generation of income by using a separate accounting method, there have been difficulties. The Supreme Court has pointed out that "while it purports to isolate portions of income received in various States, [separate accounting] may fail to account for contributions to income resulting from functional integration, centralization of management, and economies of scale." (*Mobil Oil Corp. v. Commissioner of Taxes* (1980), 445 U.S. 425, 438, 63 L. Ed. 2d 510, 521, 100 S. Ct. 1223, 1232.) The court went on to say that "it becomes

misleading to characterize the income of the business as having a single identifiable 'source.' Although separate geographical accounting may be useful for internal auditing, for purposes of state taxation it is not constitutionally required." (445 U.S. 425, 438, 63 L. Ed. 2d 510, 521, 100 S. Ct. 1223, 1232.) (See also Hellerstein, State and Local Taxation, 400 (3d ed. 1969); Dexter, "The Unitary Concept in State Income Taxation, 10 Urb. Law. 243 (1978).) Recently the Supreme Court in *Exxon Corp. v. Wisconsin Department of Revenue* (1980), 447 U.S. 207, 65 L. Ed. 2d 66, 100 S. Ct. 2109, held that where a State has enacted an apportionment statute, the existence and use by a company of an internal auditing or accounting method did not bind the State to employ the same technique for computing taxable income.

The other method of accounting, which the Director agreed should apply here, and which has been described, is the combined or unitary apportionment method of reporting. In order to apply this method to the tax returns of a corporate taxpayer, it must first be determined that it is a member of a unitary business group. As was briefly discussed, the term "unitary business group," when applied to a corporation which has subsidiaries or other associated corporations in other States or countries, is used to describe a group of functionally integrated corporate units which are so interrelated and interdependent that it becomes relatively impossible for one State to determine the net income generated by a particular corporation's activities within the State and therefore allocable to that State for purposes of taxation. A classic illustration of a unitary business is the Caterpillar Tractor Company. This corporation, with its national and international subsidiaries, forms a network of companies whose combined operations make Caterpillar Tractor the world's largest construction and earth-moving manufacturer. Caterpillar Tractor and its 25 subsidiaries employ over

82,000 individuals at locations around the world. Its net worldwide income for the taxable years 1969 through 1974 was calculated by the Director to be $1.8 billion. Despite the magnitude and diversity of these multistate and multinational operations, there is an overriding corporate design to maintain strict uniformity in areas such as product design, control maintenance, accounting procedures, research and development and even a uniform standard or code of the conduct for its personnel throughout the world. Any suggested changes or departures from these uniform procedures are subject to final approval from the corporation's principal headquarters in Peoria.

In determining whether the Illinois Income Tax Act authorizes and, indeed requires, as the Director contended and as the appellate court held, combined reporting for unitary business groups, we must analyze the legislative history of this and other related income tax acts both before and after the Illinois Income Tax Act became effective in August of 1969. In the "Official Commentary on the Illinois Income Tax Act" which was issued by the Department of Revenue shortly after the Act's effective date, it is stated under the discussion of article 3: "Article 3 of the Act provides rules for the allocation and apportionment of business and non-business income between Illinois and other states. For the most part this is accomplished by embodying *** the principles of the Multistate Tax Compact which was adopted by Illinois effective July 1, 1967. At present 16 States (including Illinois) have adopted this Compact and 11 other States are associate members. Adoption of the provisions of the Compact was believed desirable in the interests of interstate uniformity and consistency with existing Illinois law." Ill. Tax Rptr. (CCH), par. 18—000, at 1901; par. 18—006, at 1903; par. 18—023, at 1911.

The first major attempt in promoting uniformity among the States with respect to taxing interstate busi-

ness was the drafting and adoption of the Uniform Division of Income for Tax Purposes Act (UDITPA). UDITPA was incorporated into article IV of the Multistate Tax Compact (MTC) (Ill. Rev. Stat. 1973, ch. 120, par. 871 *et seq.*) and as stated in the Official Commentary cited above, the MTC became effective in Illinois on July 1, 1967. The questions before us now are: (1) whether UDITPA authorizes the use of the unitary method of apportionment; and (2) if it does, whether this method has been incorporated into the Illinois Income Tax Act.

Considering whether UDITPA authorizes the use of unitary apportionment, we first observe that UDITPA does not make any reference to unitary apportionment or combined reporting. The absence of specific reference to the unitary method is not, however, critical, for in a number of jurisdictions that adopted UDITPA and in some of them, the MTC as well, courts have held that unitary apportionment or combined reporting was authorized though the particular income tax statute made no reference to this method of reporting. In *Coca Cola Co. v. Department of Revenue* (1975), 271 Or. 517, 533 P.2d 788, the Oregon Department of Revenue applied a unitary or combined apportionment method of accounting to the income tax returns of the plaintiff corporation and its wholly owned subsidiaries, which had filed separate returns using Oregon's three-factor apportionment formula, which is similar to that set out in the Illinois statute. The Department argued that the combined method, though not specifically provided for in the tax statutes into which UDITPA had been incorporated, would more accurately reflect the income of what it contended was a unitary business operation. Concluding that the company's syrup and bottling operations were so inextricably connected as to constitute a unitary business, the court stated: "The combined method of apportionment reporting is wholly consistent with, and a natural extension of, the

apportionment method." (271 Or. 517, 528, 533 P.2d 788, 793.) The court held that the plaintiff and its subsidiaries "are all part of the same unitary operation and were required to use the combined method of reporting for the tax years in question." 271 Or. 517, 529, 533 P.2d 788, 794. See also *American Smelting & Refining Co. v. Idaho State Tax Com.* (1979), 99 Idaho 924, 592 P.2d 39; *Montana Department of Revenue v. American Smelting & Refining Co.* (1977), 173 Mont. 316, 567 P.2d 901.

The Supreme Court has also held that the absence of any statutory reference to the unitary method of reporting does not forbid its use. In *Butler Brothers v. McColgan* (1942), 315 U.S. 501, 86 L. Ed. 991, 62 S. Ct. 701, the plaintiff, an Illinois corporation conducting a wholesale goods and general merchandise business, was licensed to conduct business in Calfornia. The company had wholesale distributing divisions located in seven states, including California, each serving a district area and each controlling its own sales force, accounting procedures, sales operations and credit and financing procedures as well. Though the California tax statute did not specifically authorize the combined method of reporting or make any references to unitary operations, the court upheld the State's decision to apply the unitary method to the combined income derived from the operations of the seven divisions. In its holding the court stated that "this Court has recognized that unity of the use and management of a business which is scattered through several states may be considered when a State attempts to impose a tax on an apportionment basis. As stated in *Hans Rees' Sons, Inc. v. North Carolina,* [(1931), 283 U.S. 123, 133, 75 L. Ed. 879, 905, 51 S. Ct. 385, 389], 'the enterprise of a corporation which manufactures and sells its manufactured product is ordinarily a unitary business, and all the factors in that enterprise are essential to the realization of profits.' " 315 U.S. 501, 508, 86 L.

Ed. 991, 996, 62 S. Ct. 701, 704-05.

In a later case, *Northwestern States Portland Cement Co. v. Minnesota* (1959), 358 U.S. 450, 3 L. Ed. 2d 421, 79 S. Ct. 357, the court addressed a similar challenge to the use of a unitary apportionment method, and in citing *Hans Rees'* and other apportionment decisions (*e.g., Bass, Ratcliff & Gretton, Ltd. v. State Tax Com.* (1924), 266 U.S. 271, 69 L. Ed. 282, 45 S. Ct. 82; *Underwood Typewriter Co. v. Chamberlain* (1920), 254 U.S. 113, 65 L. Ed. 165, 41 S. Ct. 45) the court upheld the use declaring: "These cases stand for the doctrine that the entire net income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing in-state aspects of interstate affairs." 358 U.S. 450, 460, 3 L. Ed. 2d 421, 428, 79 S. Ct. 357, 363. See also *Exxon Corp. v. Wisconsin Department of Revenue* (1980), 447 U.S. 207, 65 L. Ed. 2d 66, 100 S. Ct. 2109; *Mobil Oil Corp. v. Commissioner of Taxes* (1980), 445 U.S. 425, 63 L. Ed. 2d 510, 100 S. Ct. 1223.

The intervenors contend that even though the legislature adopted UDITPA, and thus may have authorized combined reporting, when it enacted article IV of the MTC, UDITPA was not made a part of the Illinois Income Tax Act. To support this argument, the intervenors maintain that when Illinois withdrew from participation on the Multistate Tax Commission and repealed the Multistate Tax Compact in 1975, it repealed UDITPA as well and, as a result, there no longer is authority in Illinois for the combined or unitary apportionment method. That Illinois withdrew from the Multistate Tax Commission in 1975, however, did not mean that the authority to use the unitary method was also terminated. An examination of various relevant provisions of UDITPA, the MTC, and the Illinois Income Tax Act shows that the language in each pertaining to the allocation and apportionment

of business income is very similar and in some instances virtually identical. For example, the term "business income" is defined in section 1501(a)(1) of the Illinois Income Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 15—1501(a)(1)) in language, except for one additional sentence not concerned in this case, identical to the language used in section 1(e) of UDITPA and article IV, section 1(a), of the MTC to define the same term. An example of even greater significance and persuasiveness is that the three-factor apportionment formula of sales, property and payroll in the Illinois Income Tax Act, apart from some minor change not relevant here, is identical to the formula set out in UDITPA which, as we have already determined, authorizes the use of the unitary method. Considering that these provisions taken from UDITPA are part of the Illinois Income Tax Act and that the official commentary on the Act states that the rules for allocation and apportionment under sections 301 through 307 of the Act (Ill. Rev. Stat. 1979, ch. 120, pars. 3—301 through 3—307) have embodied the principles underlying article IV of the MTC, which is UDITPA, it is clear that the use of the combined or unitary apportionment method is authorized under the Act and could be required by the Department in the case of unitary business groups. The purpose of this method, as had been said, is to permit the fair determination of the portion of business income that is attributable to business activity in Illinois by the reporting member of the unitary group. The concern, it is emphasized, is in making a fair determination of tax liability. This is why the legislature provided that, if the calculation of liability made by using the combined or unitary reporting method does not accurately and fairly represent the taxable business activity in Illinois, under section 304(e) of the Illinois Income Tax Act the taxpayer may petition that another method of determination be used. Ill. Rev. Stat. 1979, ch. 120, par. 3—304(e).

The intervenors say that if the combined method of reporting is required under the Illinois Income Tax Act, its imposition will be contrary to the decision in *Japan Line, Ltd. v. County of Los Angeles* (1979), 441 U.S. 434, 60 L. Ed. 2d 336, 99 S. Ct. 1813, which, they argue, held that the combining of worldwide income for purposes of State taxation was unconstitutional. There, a Japanese shipping company challenged an *ad valorem* property tax imposed upon certain types of containers which were within the State on March 1, the tax lien date in California. The containers also were subject to a property tax in Japan under the law of that country. The Supreme Court said that the issue was "whether instrumentalities of commerce that are owned, based, and registered abroad and that are exclusively in international commerce, may be subjected to apportioned ad valorem property taxation by a State." (441 U.S. 434, 444, 60 L. Ed. 2d 336, 345, 99 S. Ct. 1813, 1819.) The court was concerned with whether the California tax scheme resulted in multiple taxation of foreign commerce and therefore constituted an impermissible intrusion into an area which the court described as one that was "preeminently a matter of national concern." (441 U.S. 434, 448, 60 L. Ed. 2d 336, 347, 99 S. Ct. 1813, 1821.) The court, in holding that the tax was invalid, judged that, first, the tax scheme "produce[d] multiple taxation in fact" and, second, it prevented "this Nation from 'speaking with one voice' in regulating foreign trade." (441 U.S. 434, 452, 60 L. Ed. 2d 336, 350, 99 S. Ct. 1813, 1823.) This was especially true since Japan and the United States had entered into an agreement entitled "Customs Convention on Containers," which was designed to prevent the imposition of all duties and taxes upon containers deemed "instruments of international traffic" (19 U.S.C. sec. 1322(a) (1976)) which were imported into the United States on a temporary basis.

*Japan Line* is obviously distinguishable from the case

here. The purpose of the apportionment formula is to confine the taxation of business income to that portion which is attributable to activities in Illinois. This appeal does not involve the multiple taxation of items or instrumentalities of foreign commerce, nor does unitary reporting affect Federal authority in governing foreign commerce. The concern here is only with the taxation of business income fairly attributable to activities within the taxing State. See *Mobil Oil Corp. v. Commissioner of Taxes* (1980), 445 U.S. 425, 63 L. Ed. 2d 510, 100·S. Ct. 1223; *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076; *Northwestern States Portland Cement Co. v. Minnesota* (1959), 358 U.S. 450, 3 L. Ed. 2d 421, 79 S. Ct. 357.

The intervenors' argument that the unitary reporting method violates due process also fails to persuade. In *Exxon Corp. v. Wisconsin Department of Revenue* (1980), 447 U.S. 207, 65 L. Ed. 2d 66, 100 S. Ct. 2109, the Supreme Court considered the issue of whether a State, in applying its method of formulary apportionment to a corporate taxpayer's total corporate income, violates the due process clause where the corporation employs a functional separate accounting method to separate the sources of income so as to reflect its claimed division of operations. In upholding Wisconsin's apportionment statute and the decision of the Department of Revenue that the corporation's Wisconsin marketing division was an integral unit of its unitary operation, the court stated: "The Due Process Clause of the Fourteenth Amendment imposes two requirements for such state taxation: a 'minimal connection' or 'nexus' between the interstate activities and the taxing State, and 'a rational relationship between the income attributed to the State and the intrastate values of the enterprise.' " (447 U.S. 207, 219-20, 65 L. Ed. 2d 66, 79, 100 S. Ct. 2109, 2118.) The nexus requirement is satisfied if the State tax is imposed upon a company

which has availed itself of the privilege of conducting business within the State. (*Wisconsin v. J.C. Penny Co.* (1940), 311 U.S. 435, 85 L. Ed. 267, 61 S. Ct. 246; *Bass, Ratcliff & Gretton, Ltd. v. State Tax Com.* (1924), 266 U.S. 271, 69 L. Ed. 282, 45 S. Ct. 82; *Underwood Typewriter Co. v. Chamberlain* (1920), 254 U.S. 113, 65 L. Ed. 165, 41 S. Ct. 45.) Illinois has a statute to this effect. Ill. Rev. Stat. 1979, ch. 120, par. 2—201.

In next examining whether a rational relationship exists between the business income claimed by the State for activities within the State and the actual value of the taxpayer's intrastate activities, the courts have looked to the reasonableness of the method used in attempting to determine fairly the level of income generated by business operations within the State. (See *Butler Brothers v. McColgan* (1942), 315 U.S. 501, 506-07, 86 L. Ed. 991, 995-96, 62 S. Ct. 701, 704. See also *Exxon Corp. v. Wisconsin Department of Revenue* (1980), 447 U.S. 207, 65 L. Ed. 2d 66, 100 S. Ct. 2109; *Mobil Oil Corp. v. Commissioner of Taxes* (1980), 445 U.S. 425, 63 L. Ed. 2d 510, 100 S. Ct. 1223.) We consider that the overall design of section 304 is calculated to determine that amount of business income fairly attributable to Illinois. (*Hans Rees' Sons v. North Carolina ex rel. Maxwell* (1931), 283 U.S. 123, 75 L. Ed. 879, 51 S. Ct. 385.) That such a formula may include income derived from international activities is not of consequence in determining whether the statute satisfies the requirements of due process. See *Mobile Oil Corp. v. Commissioner of Taxes* (1980), 445 U.S. 425, 63 L. Ed. 2d 510, 100 S. Ct. 1223; *Bass, Ratcliff & Gretton, Ltd. v. State Tax Com.* (1924), 266 U.S. 271, 69 L. Ed. 282, 45 S. Ct. 82. See also *United States Steel Corp. v. Multistate Tax Com.* (1978), 434 U.S. 452, 54 L. Ed. 2d 682, 98 S. Ct. 799.

The other arguments presented by the intervenors against recognition of the combined apportionment

method of filing are not convincing. The intervenors contend that the prohibition in Illinois against the filing of a consolidated return (Ill. Rev. Stat. 1977, ch. 120, par. 2—203(d)(2)(E)) demonstrates a legislative intention to prohibit the use of this method of reporting. We consider that the appellate court correctly stated that the ban on filing consolidated returns in Illinois was "irrelevant to a determination of whether the unitary method of apportionment is to be used in Illinois." (77 Ill. App. 3d 90, 99.) That Illinois does not permit the filing of consolidated returns does not mean that it therefore prohibits the use of the unitary apportionment method. In permitting the filing of a consolidated tax return, Federal law only requires that an affiliated group of corporations meet certain stock-ownership requirements which show interrelationship among the corporations. (26 U.S.C. sec. 1504(a) (1976).) Whether this group may also qualify as a unitary business group is irrelevant to the determination of whether it may file a consolidated Federal income tax return. The purpose of the combined method is solely to permit an accurate determination of income attributable to and taxable by Illinois in the case of a member of a unitary business group.

Finally, the intervenors' citation of a 1975 Illinois Tax Bulletin (ITIB 1975—1) as support for its argument that unitary reporting was proscribed upon repeal of the MTC is misleading. The 1975 bulletin is entitled: Withdrawal of Bulletin ITIB 1974—1 Relating to Combined Reporting for Unitary Business. The quotation from this 1975 bulletin, upon which the intervenors rely, is that "combination, as a method of reporting unitary business income, is not authorized." This 1975 bulletin was prematurely issued after the MTC was repealed and at a time when it was not known what changes in the Illinois Income Tax Act might follow. There were amendments passed in 1975, but they did not affect section 304 or any

of the rules relating to allocation and apportionment, which, as we have observed above, allow the combined or unitary method of reporting. This was made clear in a second bulletin issued in 1975, ITIB 1975—2, which declared: "Repeal of the Compact provisions has no substantive effect on current allocation and apportionment provisions of the Illinois Income Tax Act."

We turn now to a question raised by the plaintiffs. It is whether domestic corporations which elected to claim a tax credit on their Federal returns for income taxes paid to foreign governments could have deducted the amount of these foreign taxes from the taxable incomes reported on their Illinois returns. Under the Internal Revenue Code, a domestic corporation which has paid foreign income taxes has the option of claiming a tax credit under sections 901 and 960 of the Code (26 U.S.C. secs. 901, 960 (1976)), or taking a deduction under sections 164(a) and 275(a) (26 U.S.C. secs. 164(a), 275(a) (1976)). The plaintiffs argue that they were entitled to claim a deduction on their State returns for these taxes paid to foreign governments regardless of whether they claimed a tax credit or a deduction on their Federal income tax returns.

The Director disagrees, saying that if a domestic corporation elected to take a tax credit on its Federal return for foreign income taxes paid, as opposed to claiming a deduction from taxable income, it is bound by this election for State tax purposes and may not deduct these foreign tax payments from the amount of Federal taxable income reported on the State tax return.

We consider that the Director's statement is correct. The taxpayer had the election of taking a tax credit or a deduction on its Federal return. The election was binding. It would not be permitted to take a tax credit to reduce the Federal tax liability and also take a deduction from the Federal taxable income reported on the State return so as to reduce State taxable income. (*Albany International*

*Corp. v. Halperin* (Maine 1978), 388 A.2d 902; *Commonwealth v. Westinghouse Electric Corp.* (1978), 478 Pa. 164, 386 A.2d 491.) Moreover, as we will next discuss, Illinois did not permit corporations to claim a deduction for the payment of foreign taxes until 1975 and the plaintiffs had a right only to deductions specifically authorized under the Illinois Income Tax Act. See Ill. Rev. Stat. 1977, ch. 120, par. 2–203(g).

The plaintiffs make another contention regarding the payment of foreign taxes. They argue that foreign taxes paid by a foreign subsidiary of a domestic corporaton in a unitary group are deductible by the domestic corporation on its Illinois tax return when computing the combined income of the unitary group. Section 203(b) of the Illinois Income Tax Act provides:

> "(1) In general. In case of a corporation, base income means an amount equal to the taxpayer's taxable income for the taxable year as modified by paragraph (2).
>
> (2) Modifications. The taxable income referred to in paragraph (1) shall be modified by adding thereto the sum of the following amounts:
>
> \* \* \*
>
> (D) \*\*\* and by deduction from the total so obtained the sum of the following amounts:
>
> \*\*\*
>
> (F) An amount equal to any amount included in such total under Section 78 of the Internal Revenue Code \*\*\*." (Ill. Rev. Stat. 1977, ch. 120, par. 2–203(b).)

It is of course true that the effect of section 203(b) as applied through section 78 of the Internal Revenue Code is to allow a domestic corporation to claim under the Illinois Income Tax Act a deduction for foreign taxes paid by its foreign subsidiary. This provision, however, did not become effective until January 1, 1975. A corporation could qualify for this deduction only in 1975 and thereafter. The tax returns involved in this case are for years prior to

1975, and therefore the plaintiffs did not qualify for the deduction.

For the reasons given, the judgment of the appellate court on the questions raised on this appeal is affirmed.

*Judgment affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.