THE PEOPLE *ex rel.* MARGARET COLLINS, Petitioner-Appellee, v. ALFRED BURTON, Respondent-Appellee (Morris C. Davis, Jr., Indiv. and on Behalf of Rebekah Collins, a Minor, Intervenor-Appellant).

Fourth District   No. 4—96—0075

Argued July 10, 1996.—Opinion filed August 1, 1996.

Morris C. Davis, Jr. (argued), of Springfield, appellant *pro se.*

Patrick W. Kelley, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

The instant appeal arises from a paternity proceeding in the circuit court of Sangamon County in which respondent Alfred Burton had been declared the father of a child, J.C., born out of wedlock to petitioner Margaret Collins and had been ordered to make support payments to her in the sum of $190 per month. On June 4, 1994, a petition was filed on behalf of Margaret to increase the amount of that support. On May 5, 1995, Morris C. Davis, Jr., petitioned for leave to intervene in that proceeding. That petition was denied on May 15, 1995. In an order of October 3, 1995, and a subsequent clarification order of December 26, 1995, the circuit court directed Burton to pay Margaret child support in the sum of $733.40 per month and to pay an arrearage of $4,766. Davis has appealed, contending the court erred in denying him leave to intervene. We affirm.

In Davis' petition for leave to intervene he alleged that (1) he was the father of another child, R.C., born out of wedlock to Margaret; (2) he had been ordered in a paternity proceeding to pay Margaret $500 per month for the support of that child; (3) Margaret also had another child born to her out of wedlock for whom another father was paying child support; (4) the State, acting on behalf of Margaret, had filed an earlier petition to modify the $190-per-month support Burton was paying but had been allowed to withdraw that petition; and (5) in regard to the instant petition to modify, the State could not be expected to "place significant facts in evidence which are relevant

under section 505" of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505 (West Supp. 1993)).

Davis' theory behind his request to intervene is that the money Margaret receives for support of her children is necessarily lumped together to furnish the food, clothing, housing and other necessities they receive. Thus, he contends that on his own behalf or, at least, on behalf of R.C., he, as R.C.'s parent, has an interest in seeing that the total sum available for the support of the children is as ample as possible. He alleged that the State cannot be expected to protect R.C.'s interest in regard to the modification of the support for J.C. He further alleged that the State and Burton had colluded to keep Burton's support payments low. He also maintained that the court's ruling on the modification request would be binding on R.C. and him. We agree with the circuit court that Davis did not show that he had a right to intervene.

The record indicates that the modified monthly support payment which Burton was required to make equaled 20% of his stated net income, thus meeting the requirements of the guidelines of section 505(a)(1) of the Act (750 ILCS 5/505(a)(1) (West Supp. 1993)). Section 505(a)(2) of the Act does permit an award of greater than 20% of net income upon a parent if "application of the guidelines would be inappropriate" under listed circumstances. 750 ILCS 5/505(a)(2) (West Supp. 1993). Nevertheless, the indication that the circuit court increased the required support to 20% of Burton's net income tends to refute Davis' contention that the State would not have been able to make a sufficient case under section 505 of the Act. However, we do not make our decision on that basis. Rather, we hold that neither in his individual capacity nor as the father of R.C. did Davis have a sufficient interest to have a right to intervene.

■ Section 2—408 of the Code of Civil Procedure (Code) governs intervention in civil proceedings and, as applicable here, it provides:

"(a) Upon timely application anyone shall be permitted as of right to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the representation of *the applicant's interest* by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or a court officer.

(b) Upon timely application anyone may in the discretion of the court be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's

claim or defense and the main action have a question of law or fact in common.

* * *

(e) A person desiring to intervene shall present a petition setting forth the grounds for intervention, accompanied by the initial pleading or motion which he or she proposes to file. In cases in which the allowance of intervention is discretionary, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." (Emphasis added.) 735 ILCS 5/2—408(a), (b), (e) (West 1992).

As the wording in section 2—408 of the Code indicates, subsection (a) concerns intervention as a matter of right and subsection (b) involves intervention at the discretion of the court. See *Mensik v. Smith*, 18 Ill. 2d 572, 590, 166 N.E.2d 265, 275 (1960). As the circuit court denied intervention and the conditions required by subsection (b) are not present here, this case turns upon whether Davis, in either his individual or representative capacity, could intervene as a matter of right. Accordingly neither *Caterpillar Tractor Co. v. Lenckos*, 84 Ill. 2d 102, 417 N.E.2d 1343 (1981), *Maiter v. Chicago Board of Education*, 82 Ill. 2d 373, 415 N.E.2d 1034 (1980), nor *Mensik* is directly on point, as they all turn upon whether a discretionary intervention was appropriate.

In *Soyland Power Cooperative, Inc. v. Illinois Power Co.*, 213 Ill. App. 3d 916, 572 N.E.2d 462 (1991), the parties had entered into a contract by which the electric utility would build a nuclear power generator and furnish some of its electricity to the cooperative. Litigation ensued in regard to the obligations of the cooperative to the electric utility. Various distributive cooperatives who were members of the cooperative in the suit sought to intervene in the circuit court in order to learn the details of a proposed settlement and to possibly object to a settlement they deemed inappropriate. This court affirmed a circuit court order denying intervention. In the process, this court stated:

"[A] trial court must consider whether the petition to intervene is timely, whether the *petitioner's interest is sufficient*, and whether that interest is being adequately represented by someone else in the lawsuit. [Citation.] In addition, all of the provisions of the intervention statute must be met." (Emphasis added.) *Soyland*, 213 Ill. App. 3d at 918, 572 N.E.2d at 464.

■ No case concerning intervention in a proceeding concerning child support has been called to our attention. Some analogy exists between the interest necessary to intervene as a matter of right in a case and that which gives one standing to sue. In *In re Marriage of*

*Rodriguez*, 131 Ill. 2d 273, 545 N.E.2d 731 (1989), a mother having custody of her daughter brought a motion to execute on a penal bond posted by the father and listing the paternal grandmother as surety. The bond was payable to the People of the State of Illinois and was posted to secure the father's compliance with conditions placed on his visitation rights. In upholding the trial court's judgment permitting the mother to execute on the bond, the Supreme Court of Illinois stated:

> "This court has defined standing as requiring ' "some injury in fact to a legally recognized interest." ' (*In re Estate of Burgeson* (1988), 125 Ill. 2d 477, 486, quoting *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 254.) In deciding whether a party has standing, a court must look at the party to see if he or she will be benefitted by the relief granted. (See 59 Am. Jur. 2d *Parties* § 30 (1987).) Standing is a component of justiciability, and therefore must be *defined on a case-by-case basis.*" (Emphasis added.) *Rodriguez*, 131 Ill. 2d at 280, 545 N.E.2d at 734.

We recognize that a purpose of section 2—408 of the Code is to "liberalize the practice of intervention" (*Lenckos*, 84 Ill. 2d at 112, 417 N.E.2d at 1349) but, as with the doctrine of standing, it must be examined on a case-by-case basis so that unduly disruptive proceedings are not encouraged.

In *People ex rel. Graham v. Adams*, 239 Ill. App. 3d 643, 608 N.E.2d 614 (1993), a mother had custody of children fathered out of wedlock by several men. The support ordered from one was well below the guidelines of section 505(a) of the Act. This court reversed and remanded the support order for further consideration, indicating that the full 20% of net income need not necessarily be ordered when the noncustodial parent's income was very high but the circuit court is required to balance all of the matters involved and then give reasons for any deviation from the guidelines. This court noted that a "custodial parent is often contributing to the child's support from income other than the child support payments received." *Adams*, 239 Ill. App. 3d at 647-48, 608 N.E.2d at 617.

■ We agree with Davis that R.C. is indirectly affected by the amount of support which Burton pays for J.C. However, the situation here, where one custodial parent receives support from more than one noncustodial parent, has become fairly common. To permit the other noncustodial parents to intervene each time that an issue arises as to the support payments that are to be paid by one of them would be an invitation to confusion. Moreover, as this court indicated in *Adams*, custodial parents receiving support payments often have sources of income other than support payments. The amount of this

income also has some effect on the well-being of the children in that parent's custody. If a noncustodial parent can intervene in litigation determining the support payments from another noncustodial parent, would not that noncustodial parent also have a right to intervene in a suit concerning other income or property of the custodial parent? This problem would arise if a custodial parent were suing for personal injuries, back wages, or most other causes of action.

Our conclusion that the interest of Davis here is too remote to grant him a right to intervene is supported by and fully consistent with a decision of the second district in *In re Marriage of Goldstein*, 229 Ill. App. 3d 399, 593 N.E.2d 102 (1992). That court affirmed a circuit court decision in a dissolution proceeding to dismiss the petition of the daughter of the parties in which she sought a modification of the amount of her college expenses her father was ordered to pay. The second district stated:

> "[The daughter] may be correct that she has standing as a third-party beneficiary to enforce the agreed order. However, she has not argued that she has standing to modify that order. She has also cited no authority which states that a third-party beneficiary may modify an agreement." *Goldstein*, 229 Ill. App. 3d at 402, 593 N.E.2d at 104.

Any interest of Davis, even on behalf of R.C. in regard to the support payments to be paid by Burton, is much more remote than the interest of the child in *Goldstein*.

The situation here is fundamentally different from that in *Freesen, Inc. v. County of McLean*, 277 Ill. App. 3d 68, 659 N.E.2d 411 (1995), and *City of Chicago v. John Hancock Mutual Life Insurance Co.*, 127 Ill. App. 3d 140, 468 N.E.2d 428 (1984), cited and relied upon by Davis. In *Freesen*, an owner of property near and affected by the operation of an asphalt plant was held to be entitled to intervene in a proceeding for a declaratory judgment concerning the validity of a county zoning ordinance which permitted operation of the plant. The petitioner was held to have sufficient interest to intervene when the county had taken no action to protect the property owner's interest. In *John Hancock*, the owner of a condominium in a building was held to have an interest giving it a right to intervene in a suit in which the city sought certain sanctions, including demolition, because of certain ordinance violations. In those cases the effect of the action on those seeking intervention was not nearly as attenuated as here.

For the foregoing reasons, we affirm.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.