143 Wis.2d 533 (1988)
422 N.W.2d 629
AMERICAN TELEPHONE & TELEGRAPH CO., Petitioner-Appellant,
v.
Wisconsin DEPARTMENT OF REVENUE, Respondent.[]
No. 86-2222.
Court of Appeals of Wisconsin
Argued November 12, 1987.
Decided February 18, 1988.
*534 For the petitioner-appellant there were briefs by Marvin E. Klitsner and Richard S. Gallagher and Foley & Lardner of Milwaukee, and James H. Peters, of counsel, and oral argument by James H. Peters.
*535 For the respondent there was a brief by Donald J. Hanaway, attorney general, and John C. Murphy, assistant attorney general, and oral argument by John C. Murphy, assistant attorney general.
Before Dykman, Eich and Sundby, JJ.
SUNDBY, J.
American Telephone and Telegraph Company appeals an order of the circuit court affirming the Wisconsin Tax Appeals Commission's decision and order, as modified by its order on rehearing. The commission affirmed the department's denial of A.T.&T.'s petition for redetermination of additional taxes for tax years ending December 31, 1972 through December 31, 1976.[1]
A.T.&T. claims that the failure of the department to tax A.T.&T. as part of a unitary business violates secs. 71.07(2)[2] and 71.07(2)(e), Stats. (1975),[3] and the due process, commerce and equal protection clauses of the United States Constitution. Because the apportionment formula by which the department determined A.T.&T.'s Wisconsin taxable income for tax years 1975 and 1976, taxed income earned outside the borders of the state, we conclude that the additional *536 assessment for tax years 1975 and 1976 violates secs. 71.07(2), 71.07(2)(e) and the due process and commerce clauses. We therefore reverse and remand to the trial court with directions to remand the cause to the commission for further proceedings consistent with this opinion. It is not necessary that we decide A.T.&T.'s equal protection claim.

I.

BACKGROUND OF THE CASE
Section 71.07(2)(e), Stats., provides:
The net business income of ... public utilities requiring apportionment shall be apportioned pursuant to rules of the department of revenue, but the income taxed is limited to the income derived from business transacted and property located within the state.
It is undisputed that A.T.&T. is a public utility whose business income requires apportionment. Wisconsin Adm. Code, sec. Tax 2.50(1) provides that the business income of an interstate public utility, operating within and without Wisconsin, shall be apportioned to Wisconsin according to a ratio obtained by taking the arithmetical average of the property, payroll and sales fractions provided in sec. 71.07(2)(a), (b), (c), Stats., and Wis. Adm. Code, sec. Tax 2.39.[4] The formula is expressed as follows:
*537
 Property in state + Payroll in state + Sales in state = Ratio of
 Property everywhere Payroll everywhere Sales everywhere Wisconsin's
 share of
 -------------------------------------------------------------- taxable
 (÷) 3 income
A.T.&T. does not quarrel with the use of the three-factor formula to allocate to Wisconsin its share of A.T.&T.'s taxable income. The three-factor apportionment formula has not only met the approval of the United States Supreme Court, "it has become ... something of a benchmark against which other apportionment formulas are judged." Container Corp. v. Franchise Tax Bd., 463 U.S. 159, 170 (1983). A.T.&T.'s quarrel is with the factors which the department used after the department included as income subject to apportionment, the intangible income received by A.T.&T. in 1975 and 1976 from its subsidiaries.
Prior to this litigation, the department apportioned A.T.&T.'s business income by using in the apportionment formula the sales, property and payroll of A.T.&T.'s Long Lines Department.[5] Beginning *538 in tax year 1975, pursuant to newly-created sec. 71.07(1m), Stats.,[6] the department included in the apportionable business income of A.T.&T., income to its General Department from dividends and interest paid to it by its subsidiaries.[7] However, the department made no change to the property, sales and payroll factors of the apportionment formula. The commission concluded that this was error and ordered that for tax years 1975 and 1976 intangible income received by A.T.&T. from its subsidiaries was to be included in the denominator of the sales factor.
A.T.&T. claims that in order to comply with the commands of secs. 71.07(2) and 71.07(2)(e), Stats., and the United States Constitution, the department was required to treat A.T.&T. and its subsidiaries as one entity and determine its tax liability by a combined report, or alternatively, was required to include in the property factor of the formula, its book cost investment *539 in and advances to its subsidiaries which generated the dividend and interest income paid to it.[8]

II.

DEPARTMENT'S POSITION
We first consider the department's contention that the statutes and case law do not permit it to include in the apportionment formula, by combined reporting or otherwise, the value of A.T.&T.'s investment[9] in the real and tangible personal property of its subsidiaries.[10] The department argues: A. The property from which A.T.&T.'s General Department derives its income is intangible propertystock and evidences of indebtednessand that sec. 71.07(2)(a)1, Stats., expressly excludes intangible property from the property factor. B. Section 71.07(2)(a)1 includes only the "taxpayer's" real and tangible personal property and the subsidiaries are not the "taxpayer." C. According to Interstate Finance Corp. v. Dept. of Taxation, 28 Wis. 2d 262, 137 N.W.2d 38 (1965), and other cases, there is no statutory authority to include the sales, property and payroll factors of subsidiaries in the apportionment formula.

*540 A.

Property Included in Property Factor
Section 71.07(2)(a)1, Stats., includes in the property factor "real and tangible personal property." Cash, shares of stock, notes, bonds, accounts receivable, or other evidence of indebtedness, shall not be considered tangible property nor included in the apportionment. Id.
The effect of the department's argument is to exclude from the apportionment formula the real and tangible personal property of the subsidiaries which pay intangible income to A.T.&T. This argument ignores the nature of a unitary business. The real and tangible personal property owned and used by A.T.&T. as operating property is a small fraction of the Bell System's[11] operating property. The bulk of the real and tangible personal property owned and operated by the Bell System is owned and operated by A.T.&T.'s subsidiaries. We do not infer from the taxing scheme enacted by the legislature an affirmative intent to exclude from the property factor the real and tangible personal property of the subsidiaries of a unitary business. Section 71.07(2)(a)2, Stats., makes clear that the property factor includes property "used in the production of ... apportionable ... income." As we will show later, A.T.&T.'s subsidiaries produce the bulk of its income.

*541 B.

Subsidiaries as the Taxpayer
The department claims that under sec. 71.07(2)(a)1, Stats., the property fraction is limited to the "taxpayer's" real and tangible personal property and the taxpayer is A.T.&T., not its subsidiaries. We reject this interpretation of the statute as unreasonable as applied to a unitary business. The inconsistency of the department's position is immediately apparent. The department includes as business income to a unitary business, dividends, interest and other intangible income paid to A.T.&T. by its subsidiaries but refuses to go any further in recognizing the unitary principle. We conclude that the legislature in referring to the "taxpayer's" real and tangible property had no affirmative intent to limit the property factor of the apportionment formula to the real and tangible personal property owned and used by the parent corporation of a unitary business.

C.

Wisconsin Supreme Court Decisions
The department reads Interstate Finance, 28 Wis. 2d at 273-75, 137 N.W.2d at 43-44, as holding that in determining the income attributable to Wisconsin of a unitary business engaged in business within and without the state the factors of the subsidiary corporations may not be included in the apportionment formula. We disagree with that reading of Interstate Finance.
Interstate Finance, 28 Wis. 2d at 274, 137 N.W.2d at 44, and the cases which the court relied on held that *542 there was no statutory authority to ignore the corporate existence of a subsidiary corporation required to file a separate tax return and require or permit the parent corporation to file a consolidated return with the subsidiary corporation. "Since the inception of our income-tax laws we have adhered to the legal-entity theory; that is, each separate legal entity is required to file its own separate return." Id. at 273, 137 N.W.2d at 44. For the tax years in question Wisconsin Telephone Company (Wisconsin Bell) filed a separate tax return. Its property, sales and payroll are not included in the apportionment formula by which A.T.&T.'s business income is apportioned to Wisconsin. A.T.&T. likewise filed a separate return. Interstate Finance stands for the proposition that the operations of wholly-owned subsidiaries, required to file separate returns, are not included in the apportionment formula. Interstate Finance is otherwise inapposite.
[1]
We conclude therefore that neither the statutes nor Wisconsin case law excludes from the apportionment formula the value of A.T.&T.'s investment in the the real and tangible personal property of its subsidiaries.

III.

COMBINED REPORTING
We next consider A.T.&T.'s claim that the commission erred in failing to require the department to determine its tax liability by combined reporting.[12]
*543 [2]
We accept for argument A.T.&T.'s contention that combined reporting is the best measure of apportionment *544 of the taxable income of a unitary business. However, it is not the only fair measure of apportionment. The department has chosen to determine A.T.&T.'s tax liability by formulary apportionment applied to A.T.&T.'s reported taxable income. A.T.&T. acknowledges that formulary apportionment is permitted by statute. If the method chosen satisfies secs. 71.07(2) and 71.07(2)(e), Stats., and constitutional requirements, we must sustain the department's choice even though we may conclude that an alternative method would be more accurate. We therefore conclude that the commission did not err in refusing to require the department to determine A.T.&T.'s tax liability by combined reporting.

IV.

CONSTITUTIONALITY
A.T.&T. claims that if the department refuses to determine its tax liability by a combined report approach, the department must include in the property factor under sec. 71.07(2)(a)1, Stats., A.T.&T.'s book cost investment in the real and tangible personal property of its dividend and interest paying subsidiaries. Its claim requires that we consider whether the apportionment formula satisfies statutory and constitutional requirements.
Sections 71.07(2) and 71.07(2)(e), Stats., merely state what is a requirement of both the due process and the commerce clausesincome subject to taxation by Wisconsin must be derived from business transacted and property located within the state. See Moorman *545 Mfg. Co. v. Bair, 437 U.S. 267, 273 (1978) (the due process clause requires that income attributed to state for taxation must be rationally related to values connected with the taxing state); Hellerstein, Recent Developments in State Tax Apportionment and the Circumscription of Unitary Business, 21 Nat'l Tax J. 487 (1968) (whether a tax constitutes an "undue burden" on interstate commerce is tested by essentially the same test as is employed to decide whether the due process clause has been violated).
Container Corp., 463 U.S. at 169-70, states the authoritative test for the constitutionality of apportionment formulas:
[A]n apportionment formula must, under both the Due Process and Commerce Clauses, be fair. The first, and again obvious, component of fairness in an apportionment formula is what might be called internal consistencythat is, the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business' income being taxed. The second and more difficult requirement is what might be called external consistencythe factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated. The Constitution does not "invalidat[e] an apportionment formula whenever it may result in taxation of some income that did not have its source in the taxing State ...." Nevertheless, we will strike down the application of an apportionment formula if the taxpayer can prove "by `clear and cogent evidence' that the income attributed to the State is in fact `out of all appropriate proportions to the business transacted ... in that State,' ... or has `led to a grossly distorted result.'" (Citations omitted, emphasis added by Court.)
*546 We therefore examine the formula used by the department to determine whether it is internally and externally consistent.

A.

Internal Consistency
The department claims that if every jurisdiction having the power to tax A.T.&T.'s income followed Wisconsin's apportionment formula, no more than all of A.T.&T.'s business income would be taxed. A.T.&T. does not attempt to refute the department's assertion and we take it to be conceded. See State ex rel. Sahagian v. Young, 141 Wis. 2d 495, 500, 415 N.W.2d 568, 570 (Ct. App. 1987) (party cannot complain if propositions of opposing party which they do not undertake to refute are taken as confessed). It is therefore the rule of this case that Wisconsin's apportionment formula is internally consistent.

B.

External Consistency
We next consider whether the factors used by the department in the apportionment formula "reflect a reasonable sense of how [A.T.&T.'s] income is generated." Container Corp., 463 U.S. at 169. If they do, the formula is externally consistent.
We first examine how A.T.&T.'s taxable income was generated. For tax year 1976, A.T.&T. reported Wisconsin apportionable net income of approximately $500 million.[13] All of this income was generated by its *547 Long Lines Department's operations in Wisconsin. In its audit, the department included as additional income subject to apportionment approximately $3 billion of intangible income generated by A.T.&T.'s subsidiaries.
As of December 31, 1976, A.T.&T.'s Long Lines Department's real and tangible personal property in Wisconsin used in the production of apportionable income had a gross book cost of ninety-nine million dollars, approximately 1.5% of the gross book cost of all operating property owned and used in its interstate telecommunications operations and 0.1% of all of the Bell System's property. Its Long Lines Department maintained in Wisconsin an administrative office and a district sales office and employed 235 employees out of a total Long Lines work force of 34,906 employees.[14] Only one of A.T.&T.'s operating subsidiaries, Wisconsin Telephone Company (Wisconsin Bell), did business or owned property in Wisconsin. Western Electric conducted approximately one percent of its total business in Wisconsin.
As of December 31, 1976, A.T.&T.'s twenty-three subsidiaries had investment in telecommunications plant totalling almost eighty-nine billion dollars and employed over 735,000 employees. A.T.&T.'s investment in its subsidiaries was approximately $29.5 billion. Its subsidiaries annually paid 75-80% of their net earnings to it as earnings. In 1976 A.T.&T. received dividend income from its subsidiaries of $2,871,718,743. The dividends paid to A.T.&T. by its Wisconsin subsidiaries were deducted under sec. 71.04(4), Stats. Its other subsidiaries conducted no *548 business and had no property or employees in Wisconsin.
[3]
The fact that the bulk of A.T.&T.'s income is generated by subsidiaries which do no business in Wisconsin does not invalidate a tax on such income, for the unitary business theory "rejects geographical or transactional accounting." Container Corp., 463 U.S. at 165. Dividends from subsidiaries and affiliates which do no business within the taxing state are includable in the taxable income of the parent corporation, "[s]o long as [they] reflect profits derived from a functionally integrated enterprise." Mobil Oil Corp. v. Commissioner of Taxes, 445 U.S. 425, 440 (1980).
[4]
However, a state may not tax such income by use of an apportionment formula unless the formula "display[s] a modicum of reasonable relation to corporate activities within the State." General Motors Corp. v. District of Columbia, 380 U.S. 553, 561 (1965). The question which this case presents is what are the constitutionally sufficient elements of a formula which apportions to the taxing state intangible income paid by its subsidiaries to a taxpayer engaged in a unitary business. This question has not been dealt with authoritatively by the courts.[15] The Mobil court expressly disclaimed that there was before it the issue of the constituents of a fair apportionment formula. *549 Id., 445 U.S. at 434. Commentators, however, have recognized that future constitutional attacks on state taxation of unitary businesses may focus, as does A.T.&T.'s attack, on apportionment formulas which allegedly give insufficient weight to the sales, property and payroll of subsidiaries which make dividend, interest, royalty, and other payments to the parent corporation which are included by the taxing state as income subject to apportionment.[16]
Our examination of the United States Supreme Court decisions involving various aspects of state taxation of unitary businesses[17] and of the commentaries *550 convinces us that no "bright-line" rule can or should be laid down as to what ingredients a constitutional formula must contain. The now-standard threefactor formula is justified as "a rough, practical approximation of the distribution of either a corporation's sources of income or the social costs which it generates." General Motors, 380 U.S. at 561. Arriving at precise allocations of "value" is an "elusive goal." Container Corp., 463 U.S. at 164. For this reason and others, the Supreme Court has long held that the constitution imposes no single formula upon the states. Wisconsin v. J.C. Penney Co., 311 U.S. 435, 444 (1940).
[5]
We conclude that in this case the apportionment formula used by the department does not bear a reasonable relation to the corporate activities of the *551 Bell System in Wisconsin; it apportions to Wisconsin far too much income of the Bell System in relation to its property located here, its sales here or its payroll. "The simple but controlling question is whether the state has given anything for which it can ask return." J.C. Penney Co., 311 U.S. at 444. Wisconsin has given to A.T.&T. the privilege of carrying on business in the state. It has provided its Long Lines Department protection, governmental services and the benefits of an orderly, civilized society.[18] But the taxes which Wisconsin exacts from A.T.&T. are grossly disproportionate to the benefits conferred.
The formula, applied nationwide to the entire Bell System, would have resulted in the tax years in question in far too much income being apportioned to Wisconsin and other states where A.T.&T. operated a portion of its unitary business, and too little income apportioned to the jurisdictions where the subsidiaries function. We conclude the apportionment formula used by the department does not reflect a reasonable sense of how A.T.&T.'s income is generated and taxes value earned outside the borders of Wisconsin, contrary to secs. 71.07(2) and 71.07(2)(e), Stats., and the due process and commerce clauses of the United States Constitution. We do not, however, mandate a formula. The department should have flexibility in determining a formula which involves the least administrative inconvenience and expense, as long as the formula satisfies statutory and constitutional requirements. For this reason, we reject A.T.&T.'s claim that a fair apportionment formula must include in the property factor the value of its investments in *552 its subsidiaries. Because of our conclusion, we need not reach A.T.&T's equal protection claim.
By the Court.Order reversed and cause remanded to the trial court with directions to remand to the commission for further proceedings consistent with this opinion.
NOTES
[] Petition to review denied.
[1] Under the department's assessment, A.T.&T. received a refund for tax years 1972, 1973 and 1974. A.T.&T.'s attack is on the additional taxes assessed for 1975 and 1976.
[2] Section 71.07(2), Stats. (1975), provides in part:

Corporations ... engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state.
Section 71.07(2)(a), (b) and (c), Stats. (1975), applies to A.T.&T. by cross-reference in Wis. Adm. Code, sec. Tax 2.50.
[3] Unless otherwise indicated, all references are to the 1975 statutes.
[4] Wisconsin Adm. Code, sec. Tax 2.50(1) provides:

For the calendar year 1973, or corresponding fiscal years, and for calendar and fiscal years thereafter, expect as provided in sub. (2), the business income of "public utilities", as defined in s. 71.07(2)(d)2, Stats., operating within and without Wisconsin, shall be apportioned to Wisconsin on the basis of the ratio obtained by taking the arithmetical average of the 3 ratios provided in s. 71.07(2)(a), (b) and (c), Stats., and s. Tax 2.39.
Wisconsin Adm. Code, sec. Tax 2.39 provides:
Any person doing business both in and outside this state shall report by the statutory apportionment method when the person's business in this state is an integral part of a unitary business unless the department, in writing, allows reporting on a different basis.
[5] A.T.&T. is an interstate and international public utility which in tax years 1975 and 1976 operated in forty-nine states. A.T.&T. was divided into the Long Lines Department and the General Department. The Long Lines Department constructed and operated the telecommunications system. The General Department was responsible for the investment and holding of stock in its subsidiaries and for providing to them capital, technical assistance, and research.
[6] Section 71.07(1m), Stats., provides in part:

All other income or loss, including income or loss derived from land contracts, mortgages, stocks, bonds and securities or from the sale of similar intangible personal property, shall be deemed business income or loss and shall follow the situs of the business
....
Prior to the 1975 amendment, sec. 471m, ch. 39, Laws of 1975, such income followed the situs of the recipient. According to the testimony and exhibits, the department sought unsuccessfully, in the 1975 budget bill, to have such income follow the "commercial domicile" of the business.
[7] The department also included in A.T.&T.'s apportionable Wisconsin income for the tax years 1972-1976, its license contract revenues, rents, capital gains and other miscellaneous income, and for tax years 1973-76, its royalty income.
[8] A.T.&T. does not contend that the department was required to adjust the payroll factor of sec. 71.07(2)(b)1, Stats.
[9] For purposes of this opinion, we will consider A.T.&T.'s cash advances to its subsidiaries as investments.
[10] The testimony and exhibits establish that, before issuing the audit report herein, the department considered adjusting the sales factor to include dividends, adding other factors such a "dividends" or "intangible property" factor, or including the value of A.T.&T.'s investments in the property factor, but all alternatives were rejected because of lack of statutory authority.
[11] During the years in question A.T.&T. was the parent corporation of Western Electric Company, Bell Telephone Laboratories, and twenty-one operating telecommunications companies. A.T.&T. and its subsidiaries and two other corporations in which A.T.&T. held a minority interest, were known as the Bell System.
[12] Combined reporting is "in essence ... an accounting or auditing device that treats separate corporations engaged in a single unitary trade or business as one for the limited purpose of properly accounting for and assigning the income of any member." Dexter, Taxation of Income from Intangibles of Multistate-Multinational Corporations, 29 Vand. L. Rev. 401, 419 (1976). "Under [combined reporting] the combined income of the entire group is determined, not for the purpose of taxing such income, or any part of it, but rather as a starting point for computing the taxable portion of the income of those particular members of the group which are subject to the state's jurisdiction." Rudolph, State Taxation of Interstate Business: The Unitary Business Concept and Affiliated Corporate Groups, 25 Tax L. Rev. 171, 198 (1970).

For a discussion of combined reporting, see Keesling, The Impact of the Mobil Case on Apportionment of Income, 1981 B.Y.U.L. Rev. 87, 104-06. Keesling states that "[t]here can be no doubt that the [United States Supreme] Court will uphold the constitutionality of the combined report if and when the issue is presented to it." Id. at 104-05. He suggests that in a proper case the United States Supreme Court will hold that the formula method utilized by the combined report must be used. Id. at 105.
Relying on Interstate Finance, the department claims that the combined reporting approach is not authorized under Wisconsin law. The court in Interstate Finance, 28 Wis. 2d at 274, 137 N.W.2d at 44, held that the Wisconsin statutes do not authorize the department to require a consolidated return. There is, however, a difference between a consolidated return and a combined report.
Actually the combined report is not a tax return, but constitutes something in the nature of an information return. Notwithstanding its use, each corporation doing business in the taxing state is taxed on or measured by only its own income from sources within the state. However, if the corporation doing business in the state is a member of an affiliated group conducting a business within and without the state, then instead of computing the income attributable to the state on the basis of the corporation's books of account, which may reflect the operation of only a small segment of the business, the apportionment is made with reference to the income from the entire business just as would be done if the business had been conducted by one entity. Keesling, A Current Look at the Combined Report and Uniformity in Allocation Practices, 42 J. Tax'n 106, 109 (1975).
[13] In the commission proceedings, 1976 was selected as a representative year.
[14] The commission found that the department's only basis for taxing A.T.&T. was the conduct of its interstate telecommunications business in Wisconsin.
[15] In Mobil, 445 U.S. at 459 (Stevens, J., dissenting), Justice Stevens expressed the opinion that it was improper to lump huge quantities of investment income having no special connection with the taxpayer's operation in the state into the tax base and apportion it on the basis of factors used to allocate operating income. He expressed the opinion that the court had at least partly disclaimed reliance on any such theory. Id.
[16] See Hellerstein, supra, 21 Nat'l Tax J. at 496 (property, receipts and payroll ratios of all subsidiaries are taken into account in determining apportionment ratio); Keesling, supra note 12, 1981 B.Y.U.L. Rev. at 101 (including subsidiaries' income in tax base without including in formula's denominator any of subsidiaries' factors would result in "serious distortion" in apportionment). Keesling suggests that the policy of treating dividends as unitary apportionable income has its limitations and problems, including the difficulty of formulating a constitutional formula without undue administrative confusion, and discrimination and avoidance. Id. at 102-04. It has been suggested that the solution to both the constitutional problems and the administrative confusion is to adopt full apportionment with combined reporting. Dexter, supra note 12, 29 Vand. L. Rev. at 419-21. "This eliminates tax results flowing from the corporate shell game and places competing states and businesses on a tax parity. Under full apportionment and combined reporting, `nowhere income' and duplicate taxation are avoided, producing state income taxation that is constitutionally permissible and equitable." Id. at 421.
[17] See, e.g., Container Corp., 463 U.S. at 159 (California corporate franchise tax employing unitary principle held valid and applicable to corporation and its overseas subsidiaries); ASARCO Inc. v. Idaho State Tax Comm'n, 458 U.S. 307 (1982) (including intangible income received from subsidiary having no connection with state in taxable income of nondomiciliary parent corporation, violates due process); F.W. Woolworth Co. v. Taxation & Rev. Dept., 458 U.S. 354 (1982) (state's taxation of dividends received from foreign subsidiaries doing no business in state, violates due process); Exxon Corp. v. Wisconsin Dept. of Revenue, 447 U.S. 207 (1980) (state's taxation, under apportionment formula, of income of vertically integrated corporation carrying on only marketing within state, does not violate due process or commence clauses); Mobil, 445 U.S. at 425 (taxation of dividend income from foreign subsidiaries by apportionment, does not violate due process or commerce clauses); Moorman Mfg. Co., 437 U.S. at 273 (single-factor formula for apportionment of income of unitary business not invalid per se); Butler Brothers v. McColgan, 315 U.S. 501 (1942) (income loss shown by taxpayer's accounting did not invalidate tax based on valid apportionment formula); Bass, Ratcliff & Gretton v. State Tax Commission, 266 U.S. 271 (1924) (apportionment formula whose factors were real and tangible personal property, bills and accounts receivable, and stock, not inherently arbitrary); and Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113 (1920) (one-factor formulareal and tangible personal propertynot inherently arbitrary).
[18] A.T.&T.'s dividend income was applied to its dividend and interest obligations to its public shareholders and bondholders. None of it was applied to its Long Lines operation.