**NCR CORPORATION, Relator,**

v.

**COMMISSIONER OF
REVENUE, Respondent.**

**No. C2–88–762.**

Supreme Court of Minnesota.

Feb. 24, 1989.

Rehearing Denied April 14, 1989.

James W. Littlefield, Minneapolis (William L. Goldman, James A. Reedy, of counsel), Washington, D.C., for relator.

Hubert H. Humphrey, III, Atty. Gen., Thomas R. Muck, Deputy Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

KELLEY, Justice.

Relator, NCR Corporation, (NCR) appeals from an order of the Tax Court upholding the Respondent Commissioner of Revenue's (Commissioner) order which assessed additional corporate taxes against the relator for the years 1977–1981, and dismissed the relator's constitutional challenges to the statute under which the tax was assessed, Minn.Stat. § 290.19 (1980). We affirm the Tax Court's order which sustained the Commissioner's additional assessment, and find the apportionment formula constitutional.

Relator NCR Corporation is a Maryland corporation with its principal place of business in Dayton, Ohio. NCR conducts some of its business within the State of Minnesota. It likewise transacts business in other states, and, additionally transacts business in foreign countries through its foreign branches and subsidiaries. None of the foreign subsidiaries transact business in the State of Minnesota, nor do any pay taxes in the State of Minnesota. NCR, its branches and its subsidiaries form a "unitary business" within the meaning of Minnesota's corporate income tax laws.

Relator's business involves the manufacture and sale of business machines and equipment. By means of licensing agreements, it has granted the subsidiaries the right to manufacture and sell machines and equipment patented by it. In return, NCR receives royalty payments from the foreign subsidiaries. NCR's gross income also includes dividend payments made to it by its foreign subsidiaries.[1]

Relator filed its corporate tax returns for the tax years in question with the State of Minnesota, as required by Minn.Stat. § 290.37, subd. 1 (1980). Only that portion of NCR's income attributable to its activities in Minnesota was taxable by Minnesota. In its returns for the tax years in question, NCR calculated that portion attributable to Minnesota pursuant to a formula found in Minn.Stat. § 290.19 (1980). That statute provides a method which uses a percentage of the taxpayer's gross income, less enumerated allowed deductions, to reach apportionable income. The gross income percentage is obtained by making three calculations: the sales made, property used, and payroll paid in Minnesota being the numerator, compared to the total sales made, property used and payroll paid elsewhere, the denominator. In its 1977–1981 Minnesota income tax returns, NCR had excluded income from royalties paid by licensees as well as dividends and interest it had received from its foreign subsidiaries. On audit, the Commissioner included that income in NCR's apportionable income. It is that inclusion that originally gave rise to this appeal.

Relator challenged the Commissioner's action of including the foreign income by

---

1. The foreign subsidiaries also pay interest to NCR which, of course, is income to it. The Commissioner included this interest in the computation of NCR's income attributable to Minne- sota for the tax years in question. NCR does not challenge its inclusion in its notice of appeal from the Commissioner's order.

appealing to the Tax Court. There, as here, it asserts that the inclusion of the foreign income (dividends and royalties) is not required by the statute, and that the Commissioner's inclusion of it was unconstitutional. Alternatively, it argues that if the foreign payments were to be included in its gross income, then the payroll paid, property used and sales made figures for the subsidiaries must likewise be included in the denominator of the fraction used in computing NCR's apportionable income.[2]

The Tax Court rejected both of NCR's contentions. It held the statutory scheme did require inclusion of subsidiary and licensee payments as part of NCR's gross income, but that no adjustment in the apportionment formula was required so as to take into account the subsidiaries' payroll paid, property used and sales made figures. Additionally, the Tax Court concluded the apportionment formula was not so disproportionate as to be unconstitutional under the Due Process and Commerce Clauses of the United States Constitution.

1. We first address relator's challenge to the apportionment formula as applied by the Commissioner. Our review of questions of fact is limited to ascertaining whether sufficient evidence exists to support the Tax Court's findings of fact, but we have plenary review of legal questions. *Nagaraja v. Comm'r of Revenue,* 352 N.W.2d 373, 376 (Minn.1984).

In order to tax the income of corporations engaged in more than one state, the taxing state must determine what portion of the corporation's income is attributable to the corporation's business activities within its own jurisdiction. To do so, all states employ some type of mathematical formula to apportion the corporation's income. One approach, the "formula apportionate" method, takes the total income of the corporation, the tax base, and apportions it to the taxing jurisdiction through the use of up to three objective factors: the property used, payroll paid and sales made factors. These factors are thought to be objective measures of the corporation's activities within and without the taxing jurisdiction. *See Container Corp. of America v. Franchise Tax Board,* 463 U.S. 159, 165, 103 S.Ct. 2933, 2940, 77 L.Ed.2d 545 (1983). The property used, payroll paid and sales made activities of the corporation *within the state,* the numerator, are compared to the activities *outside the state,* the denominator, to arrive at a percentage of the tax base attributable to the corporation's activities within the taxing jurisdiction.

During the tax years at issue (1977–1981), Minnesota's formula taxed corporations on a separate entity basis—taxing each on its own income, which included income such as dividends paid by subsidiaries or royalties paid to it by licensees. This procedure entailed comparing the corporate taxpayer's total property used, payroll paid and sales made factors in Minnesota with the total of the same items elsewhere. Combined reporting, that is, reporting of a parent corporation's income with that of its subsidiaries, was generally not permitted, although the Commissioner had certain discretion to allow combined reporting only if the separate entity formula proved to be "unfair." *See Westinghouse Elec. Corp. v. Comm'r of Revenue,* 398 N.W.2d 530, 536–37 (Minn.1986).[3]

In support of its argument that the apportionment statute required the inclusion of at least a part of its foreign subsidiaries' expenses in the denominator of the apportionment formula fraction, NCR relies on statutory language such as "total sales"

---

2. In the Tax Court, NCR also challenged the constitutionality of Minn.Stat. § 290.21, subd. 4 (1980). This statute allowed a corporation doing business *outside* of Minnesota to exclude 85 percent of dividends received, while an *in-state* corporation excludes 100 percent. The Tax Court refused to address this issue, finding it did not have jurisdiction. NCR has not challenged this ruling in its Writ of Certiorari to this Court, thus it is not addressed in this opinion.

3. In 1982, the Minnesota Legislature amended Minn.Stat. § 290.34 (1982) to permit affiliated corporations, such as a parent and subsidiary, to file a "combined report." *See* Minn.Stat. § 290.34, subd. 2 (1984). Under this method, a corporation and its affiliated companies would file one return, combining their income and apportionment factors.

and "wherever located" and "wherever made."[4]

The Commissioner responds to that contention by pointing out that under the taxing statutes the state may not and does not tax the income of a corporation's foreign subsidiaries which do no business in the state. Therefore, their factors of property used, payroll paid and sales made should not be included in the denominator of the formula fraction. In order to determine which of these positions is correct, we are required to construe the apportionment statute, keeping in mind that our task when construing a statute is to ascertain and give effect to the legislative intent. Minn.Stat. § 645.16 (1988). *See Mankato Citizens Tel. Co. v. Comm'r. of Taxation,* 275 Minn 107, 111, 145 N.W.2d 313, 317 (1966).

At the outset, we note that to construe the statute as NCR urges would be tantamount to our holding that when the legislature uses such terms as "gross income" in describing the tax base, and language such as "total" and "wherever located" in the apportionment statute, it intended that a corporation's foreign source income as well as its subsidiaries' activities both be included in the fraction when undertaking to apportion income. Such a result would be inconsistent with the nature of a single-entity apportionment formula.

NCR supports its position by relying on the Nebraska case *Kellogg Co. v. Herrington,* 216 Neb. 138, 343 N.W.2d 326 (1984), one of the two appellate decisions which have come closest to addressing the specific question presented by this case. Nebraska's statute utilized a three-factor apportionment formula similar to Minn.Stat. § 290.19 (1980). Nebraska's statute identified the factors going into the formula as "all" the property used, payroll paid "everywhere," and the sales made "everywhere." Neb.Rev.Stat. § 77–2744. The Nebraska court, relying on its rules of statutory construction, held that the language employed clearly and without ambiguity included designated foreign subsidiaries' activities in the denominator of the apportionment formula fraction. *Id.* 343 N.W.2d at 332. Thus, in effect, the Nebraska court concluded that its apportionment formula contemplated combined reporting by a corporate taxpayer and its affiliated companies.

On the other hand, the Commissioner finds support for his position in a decision of the Maryland Court of Appeals which reached a contrary result when construing similar statutory language in Maryland's statute. *NCR Corp. v. Comptroller,* 313 Md. 118, 544 A.2d 764 (1988). The Maryland court rejected Nebraska's analysis because "it was heedless of legislative intent and legislative history." *Id.,* 544 A.2d at 777. Instead, the Maryland court empha-

---

**4.** The statute it relies on is Minn.Stat. § 290.19, subd. 1(1)(1980) which reads as follows:

Subdivision 1. **Computation, business conducted partly within state; apportionment.** The taxable net income from a trade or business carried on partly within and partly without this state shall be computed by deducting from the gross income of such business, wherever derived, deductions of the kind *permitted by section 290.09, so far as* connected with or allocable against the production or receipt of such income. The remaining net income shall be apportioned to Minnesota as follows:

(1) If the business consists of the mining, producing, smelting, refining, or any combination of these activities of copper and nickel ores, or of the manufacture of personal property and the sale of said property within and without the state, the remainder shall be apportioned to Minnesota on the basis of the percentage obtained by taking the arithmeti-

cal average of the following three percentages:

(a) The percentage which the sales made within this state is *of the total sales wherever made;*

(b) The percentage which the total tangible property, real, personal, and mixed, owned or rented, and used by the taxpayer in this state during the tax period in connection with such trade or business *is of the total tangible property,* real, personal, or mixed, *wherever located,* owned or rented and, used by the taxpayer in connection with such trade or business during the tax period; and

(c) The percentage which *the taxpayer's* total payrolls paid or incurred in this state or paid in respect to labor performed in this state in connection with such trade or business is of the taxpayer's *total* payrolls paid or incurred in connection with *such entire trade or business;* (emphasis supplied).

sized that it was the state's goal to tax "* * * so much of a corporation's net income as is constitutionally permissible." *Id.* Because Nebraska's approach served the opposite result, to-wit: the lowest possible tax to the state, Maryland rejected the Nebraska analysis. Additionally, it noted that reference in the apportionment statute to "the taxpayer" definitionally excluded the taxpayer's subsidiaries. Accordingly, the Maryland court appeared unwilling to construe its statute so as to permit "combined reporting."

We find the Maryland approach more persuasive than Nebraska's. Minnesota, as did Maryland, in the tax years at issue, sought to tax a foreign corporation's income to the extent constitutionally possible. Minn.Stat. § 290.17, subd. 2(4) (1980) reflected a legislative objective to maximize Minnesota's collection of income taxes from corporations doing business in Minnesota by adopting the "unitary business" concept as well as enacting the three-factor single-entity apportionment formula in Minn.Stat. § 290.19, subd. 1(2)(a) (1980). The thread of this policy, though perhaps never precisely articulated, likewise runs through our cases rejecting corporate taxpayer challenges to that system, *see, e.g., Comm'r of Revenue v. Associated Dry Goods, Inc.,* 347 N.W.2d 36 (Minn.1984); *Maurice L. Rothschild & Co. v. Comm'r of Taxation,* 270 Minn. 245, 133 N.W.2d 524 (1965); *Great Lakes Pipe Line Co. v. Comm'r of Taxation,* 272 Minn. 403, 138 N.W.2d 612 (1965) *appeal dismissed,* 384 U.S. 718, 86 S.Ct. 1886, 16 L.Ed.2d 881 (1966). The two statutes, Minn.Stat. § 290.17, subd. 2(4) and 290.19, subd. 1 (1980), as well as the cases construing them, clearly established that, absent compelling circumstances resulting in unfairness, for the tax years here involved, combined income tax reporting, which in es-

sence would ensue were we to accept NCR's position, by a unitary business was not available to a corporate taxpayer. *Westinghouse Electric Corp.,* 398 N.W.2d 530 at 537 (Minn.1986). In addition, we conclude it appears that the Commissioner properly included in NCR's general income, for purposes of the apportionment formula, income payments it received from licensees and subsidiaries.[5]

It does not follow, however, as relator would have us hold, that the subsidiaries' factors likewise should be included in the denominator of the apportionment formula. Indeed, our examination of the statutory language leads us to the opposite conclusion, to-wit: that those factors should be excluded from the denominator of the fraction. Though we acknowledge that in the context of the statute, the appearance of language such as "all," "total" and "wherever located" does afford some credence to relator's position, *see* Minn.Stat. § 290.19, subd. 1 (1980), this language must be considered in context. *See* Minn.Stat. § 645.16 (1988). The statute, for example, refers to total property, wherever located, of "the taxpayer," and to the "taxpayer's" total payrolls. Minn.Stat. § 290.19, subd. 1(1)(b)-(c) (1980). As did the Maryland court, *see NCR Corp.,* 544 A.2d at 777, we conclude that "taxpayer" as used in the apportionment statute did not include foreign subsidiaries not subject to taxation in Minnesota. Minn.Stat. § 290.01, subd. 6 (1980) defines "taxpayer" as a "person or corporation subject to a tax imposed by this chapter [Chapter 290.]" Moreover, the parties stipulated NCR and its foreign subsidiaries operate as "a single unitary business." We follow Illinois and would define unitary business as "a group of functionally integrated corporate units which are so interrelated and interdependent that it becomes relatively impossible for one state to deter-

5. As indicated, NCR initially excluded from its income interest, royalties and dividends received from licensees and subsidiaries, and, the Commissioner's inclusion of those items in the denominator of the apportionment formula fraction originally prompted this appeal. In brief and argument, however, relator has concentrated more on the exclusion of the subsidiaries' factors. Nonetheless, we note that NCR's position with respect to the Commissioner's action is unfounded. Since NCR is a unitary business, its "entire income" is subject to apportionment. Minn.Stat. § 290.17, subd. 2(4) (1980). Moreover, that income specifically must appear in NCR's base income. *See* Minn. Stat. § 290.01, subd. 20 (1980) ("income derived from any source.")

mine the net income generated by a particular corporation's activities within the state * * *." *Caterpillar Tractor Co. v. Lenckos,* 84 Ill.2d 102, 49 Ill.Dec. 329, 337, 417 N.E.2d 1343, 1351 (1981). Therefore, NCR's foreign subsidiaries, as part of a unitary business group, are included within the term "taxpayer." *See also AT & T Co. v. Wisconsin Dep't of Revenue,* 143 Wis.2d 533, 422 N.W.2d 629, 632 (Wis.App.1988) (limiting "taxpayer" to parent of a unitary operation is inconsistent with notion of a unitary business). Both NCR and the Commissioner concede that the income of NCR's foreign subsidiaries is not subject to income taxation in Minnesota. Because NCR is the only "taxpayer" involved in this case, the apportionment statute contemplates that only its factors of property used, payroll paid, and sales made are relevant for inclusion in the denominator of the apportionment fraction. Therefore, NCR's construction argument must be rejected. The Commissioner properly excluded sales made, payroll paid, and property used factors of relator's foreign subsidiaries from the apportionment formula.

■ 2. But if that is so, argues relator, and if Minn.Stat. § 290.19 (1980) is construed to require inclusion of foreign source income in its apportionable income, then the Due Process and Foreign Commerce Clauses of the United States Constitution require at least a portion of its for-

eign subsidiaries' income generating activities (sales, payroll and property) be included in the denominator of the formula fraction (what NCR refers to as a "correlative adjustment.")[6] The use by states of apportionment formulas has been upheld by the United States Supreme Court against constitutional challenge, subject only to the limitation that a state cannot "tax value earned outside its borders." *Container Corp. of America v. Franchise Tax Bd.,* 463 U.S. 159, 164, 103 S.Ct. 2933, 2939, 77 L.Ed.2d 545 (1983). A taxpayer alleging a due process violation bears a substantial burden to demonstrate by clear and cogent evidence that the state is taxing income earned outside its jurisdiction. However, a state need not show that its statute results in the precise allocation of income resulting from activities of the taxpayer occurring within its jurisdiction. *Id.* at 169–70, 103 S.Ct. at 2942–43.[7]

In denying a similar due process challenge to our apportionment statute formula, we followed the *Container Corp.* analysis in *Westinghouse Elec. Corp.,* 398 N.W. 2d at 537 (1986). NCR, as did the taxpayer in *Westinghouse,* here argues that unless the foreign subsidiaries' activities are reflected in the denominator of the apportionment formula fraction, the Minnesota statute violates the Due Process Clause since value earned outside of Minnesota is taxed, or, in other words, that the "internal con-

6. In its brief and at oral argument, relator was unable to more precisely define what it contended should be included in this "correlative adjustment." During the course of this proceeding, NCR has seemingly shifted its position on this issue, lending some support, in our view, to the Commissioner's contention that selection of an apportionment formula is essentially one of policy for legislative resolution.

7. The test to be used in evaluating due process challenges to apportionment statutes was there explained:
The first, and again obvious, component of fairness in an apportionment formula is what might be called internal consistency—that is, the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business income being taxed. The second and more difficult requirement is what might be called external consistency—the factor or factors used in the apportionment formula must actually reflect a rea-

sonable sense of how income is generated. The Constitution does not "invalidat[e] an apportionment formula whenever it *may* result in taxation of some income that did not have its source in the taxing State * * *" *Moorman Mfg. Co.* [v. Bair] *supra,* 437 U.S. [267] at 272 [98 S.Ct. 2340, 2344, 57 L.Ed.2d 197 (1978)] (emphasis added). *See Underwood Typewriter Co.* [v. Chamberlain], 254 U.S. [113] at 120–121 [41 S.Ct. 45, 46–47, 65 L.Ed. 165 (1920)]. Nevertheless, we will strike down the application of an apportionment formula if the taxpayer can prove "by 'clear and cogent evidence' that the income attributed to the State is in fact 'out of all appropriate proportions to the business transacted * * * in that State,' [*Hans Rees' Sons, Inc. v. North Carolina,*] 283 U.S. [123] at 135, 51 S.Ct., [385] at 398 [75 L.Ed. 879 (1931)] or has 'led to a grossly distorted result.'
*Id.* at 169–70, 103 S.Ct. at 2942–43.

sistency" requirement of *Container Corp.* is not met because NCR is taxed twice on its foreign income. Relator argues that this double taxation is a reality as a result of being taxed by foreign countries on its foreign source income. By way of illustration, it claims it paid to Canada more than $7 million in withholding taxes on royalties, interest and dividends it received from its Canadian subsidiaries.

Assuming NCR's argument is properly addressed under the Due Process Clause, in our opinion NCR has failed to meet its burden of proof to sustain its internal consistency challenge. We did consider a similar internal consistency argument in *Westinghouse Elec. Corp.*, 398 N.W.2d at 537–38. There, the taxpayer argued that unitary business apportionment, rather than combined reporting with its subsidiaries, resulted in a risk of multiple taxation. *Id.* at 537. In rejecting this argument, we observed that the taxpayer had failed to demonstrate a "real danger of overlap." *Id.* at 538. NCR's argument suffers from that same lack of evidence demonstrating an overlap. It has shown that it paid a tax to Canada on a portion of the income (between 10 and 15 percent) it received from its Canadian subsidiaries. Its tax returns for 1977–1981 reveal it paid approximately 10 percent in withholding taxes to some foreign countries on its foreign source income (dividends and royalties), although taxes were not paid to all countries in which income was received by it. Even so, NCR has not demonstrated that exclusion of the subsidiaries' income producing activities in the denominator of Minnesota's formula would result in more than all of its income being taxed. In our view, NCR has fallen far short of meeting its burden of demonstrating any internal inconsistency of Minnesota's apportionment formula by

"clear and cogent" evidence. *See Westinghouse Elec. Corp.*, at 538. Realizing that such attempts to equitably apportion income are often less than meticulously precise, the Supreme Court of the United States has allowed states wide latitude in the structuring and use of statutory apportionment formulas. *See, e.g., Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 274, 98 S.Ct. 2340, 2345, 57 L.Ed.2d 197 (1978).

The *Container Corp.* test also contains a requirement of "external consistency." For an apportionment statute to meet this requirement, the factors used in the apportionment formulas must actually reflect a reasonable sense of how income is generated. *Id.* 463 U.S. at 169–70, 103 S.Ct. at 2942–43, or, to state it another way, that the taxpayer's income attributed to the state is proportional to the taxpayer's business conducted within the state. NCR argues that by excluding the subsidiaries' factors in the formula fraction, its income allocated to Minnesota will be overstated. Its position in this regard is reflected in Justice Stevens' dissent in *Mobil Oil Corp. v. Comm'r of Taxation*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980) wherein he opined that exclusion of sales made, payroll paid, and property used of subsidiaries from an apportionment formula that includes income attributable to those subsidiaries will inevitably result in external inconsistency.[8] That viewpoint, however, has never been adopted by the Supreme Court of the United States.

However, Justice Stevens' reasoning was apparently followed in *AT & T Co. v. Dep't of Revenue*, 143 Wis.2d 533, 422 N.W.2d 629 (1988), where the Wisconsin appellate court held that exclusion of a corporate taxpayer's subsidiaries' income producing activities from the denominator rendered the Wisconsin apportionment formula ex-

---

**8.** In that dissent, his views were stated as follows:

Unless the sales, payroll, and property values connected with the production of income by the payor corporations are added to the denominator of the apportionment formula, the inclusion of earnings attributable to those corporations in the apportionable tax base will inevitably cause Mobil's Vermont income to be overstated.

Either Mobil's worldwide "petroleum enterprise," is all part of one unitary business, or it is not; if it is, Vermont must evaluate the entire enterprise in a consistent manner. As it is, it has indefensibly used its apportionment methodology artificially to multiply its share of Mobil's 1970 taxable income perhaps as much as tenfold.

*Id.* at 461, 100 S.Ct. at 1243–44.

ternally inconsistent because its application apportions to Wisconsin "far too much income from the Bell system in relation to its property located here, its sales here or its payroll." *Id.* at 636. The Wisconsin court notes that courts have not authoritatively dealt with the issue so as to provide guidance, but it relied not only on Justice Stevens' dissent in *Mobil Oil Corp.*, but also on writings of several commentators. *Id.* at 635. *See, e.g.*, Hellerstein, *Recent Developments in State Tax Apportionment and the Circumscription of Unitary Business*, 21 Nat'l Tax J. 487, 496 (1968); Keesling, *The Impact of the Mobil Case on Apportionment of Income*, 1981 B.Y.U.L. Rev. 87, 101. NCR has likewise been at least partially successful in advancing Justice Stevens' view in Maryland. In *NCR Corp.*, the appellate court remanded the case directly to its tax court to determine whether the alleged distortion occurring from the exclusion of subsidiary factors in the denominator was of "constitutional dimensions." *NCR Corp.*, 544 A.2d at 781.

Though never addressing this precise issue, the United States Supreme Court has indicated that not every claimed distortion will give rise to an external inconsistency of a constitutional magnitude. Rather, to justify a finding of impermissible external inconsistency, any alleged distortion must be demonstrated to be outside the "substantial margin of error." *Container Corp.*, 463 U.S. at 184, 103 S.Ct. at 2950, (noting that while it had previously invalidated a formula resulting in a 250 percent difference, it upheld the 14 percent difference in *Container.*)

NCR attempts to illustrate its claim here of gross distortion resulting from the Commissioner's formula by comparing its net taxable income subject to apportionment to its foreign subsidiaries' property used, payroll paid, and sales made figures for 1981. NCR then concludes, based on that comparison, that for 1981, foreign source income represented 49 percent of its net taxable income, yet no indication of how that 49 percent income was generated appears to be reflected in the formula. On the other hand, the Commissioner argues that NCR's approach is improper. Rather, he contends, the correct approach is to compare the difference between tax liability resulting from different applications of the formula. When that is done, the increase in NCR's taxes resulting from application of this approach is an average of approximately 23 percent, which he argues, is within the acceptable margin of error the Supreme Court recognized in *Container Corp.* We agree that the Commissioner's comparison calculations resulting from his employment of the generally accepted method of addressing the external consistency requirement, *see, e.g.*, *Container Corp.*, 463 U.S. at 183, 103 S.Ct. at 2949–50; *Westinghouse*, 398 N.W.2d at 537, more accurately reflects any claimed tax disparity. The result reached from its application is within the "acceptable margin of error," and certainly does not approach the disparity the Supreme Court of the United States found constitutionally unacceptable in *Hans Rees Sons, Inc. v. North Carolina*, 283 U.S. 123, 135, 51 S.Ct. 385, 398, 75 L.Ed. 879 (1931). Thus, we hold that NCR has failed to demonstrate by clear and cogent evidence that the relatively small resulting disparity in tax fails to properly reflect how the income was generated, or, that an excessive amount of that income was attributed to Minnesota under proper application of its apportionment statute to be constitutionally impermissible.

■ 3. Finally, NCR argues that application of Minnesota's apportionment statute results in the possibility of multiple taxation if its subsidiaries' income is taxed under the formula in Minnesota and, as well, taxed by the foreign countries in which those subsidiaries do business. Therefore, NCR argues, it violates the Foreign Commerce Clause of the United States Constitution, art. I, § 8, cl. 3. The Supreme Court of the United States rejected a similar argument advanced by the taxpayer in *Container Corp.* In doing so, it reiterated the standards it had enumerated in *Japan Line Ltd. v. County of Los Angeles*, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d

336 (1979).[9]

NCR contends here that the risk of multiple taxation is readily apparent because it is subject to income withholding taxes on its foreign source income by foreign countries in which its subsidiaries operate, and, in fact, has paid such tax and that, therefore, pursuant to *Japan Line*, it is clear that it is exposed to double taxation. We disagree. The tax in question in *Japan Line* was a property tax. The distinction between a Commerce Clause analysis involving a property tax and an income tax analysis based upon an apportionment formula is a most significant factor for determining whether a risk of multiple taxation is constitutionally acceptable.[10]

■ NCR acknowledges the distinction between property and income taxes delineated by the court in *Container Corp.* Nevertheless, it contends that even when considering income taxes, multiple taxation "could be avoided" by incorporating the subsidiaries' income producing factors in the formula. It appears to us that in any income tax apportionment formula continu-

al risk of multiple taxation exists. However, a constitutional analysis does not require a state to apply a different formula simply because the risk *may* be lower.[11] Even assuming that NCR is correct in its contention that inclusion of subsidiaries' factors in the formula would more accurately reflect the taxpayer's activities within the state, the argument relates more appropriately to its due process claim. Even so, we are unable to reach a conclusion that its adoption would *prevent* multiple taxation, the evil to be avoided under *Japan Line*. Rather, its contention merely presents an option between two variations of the formula, neither one of which can be found to be completely precise in avoiding overlapping taxation. Therefore, we conclude its contention in that respect must fail.

The second consideration under *Japan Line* is whether the statutory formula as applied by the Commissioner impairs federal uniformity. This issue relates to whether a state tax implicates foreign policy is-

---

**9.** In discussing this issue, the court stated:

The first [consideration] is the enhanced risk of multiple taxation. Although consistent application of the fair apportionment standard can generally mitigate, if not eliminate, double taxation in the domestic context,

neither this Court nor this Nation can ensure full apportionment when one of the taxing entities is a foreign sovereign. If an instrumentality of commerce is domiciled abroad, the country of domicile may have the right, consistently with the custom of nations, to impose a tax on its full value. If a State should seek to tax the same instrumentality on an apportioned basis, multiple taxation inevitably results * * *.

The second additional consideration that arises in the foreign commerce context is the possibility that a state tax will "impair federal uniformity in an area where federal uniformity is essential."

A state tax on instrumentalities of foreign commerce may frustrate the achievement of federal uniformity * * *. If other States followed the taxing State's example, various instrumentalities of commerce could be subjected to varying degrees of multiple taxation, a result that would plainly prevent this Nation from "speaking with one voice" in regulating foreign commerce.

*Container Corp.*, 463 U.S. at 185–86, 103 S.Ct. at 2950–51, *quoting Japan Line*, 441 U.S. at 447–51, 99 S.Ct. at 1820–23 (citations omitted).

**10.** For example, in *Container Corp.*, which did involve an income tax apportionment statute, the court explained:

That California would have trouble avoiding double taxation even if it adopted [a different formula] is, we think, a product of the difference between a tax on income and a tax on tangible property. * * * Allocating income among various jurisdictions bears some resemblance * * * to slicing a shadow. In the absence of a central coordinating authority, absolute consistency, even among taxing authorities whose basic approach to the task is quite similar, may just be too much to ask.

*Container Corp.*, 463 U.S. at 192, 103 S.Ct. at 2954.

**11.** As the Supreme Court of the United States observed in *Container Corp.*:

If California's method of formula apportionment "inevitably" led to double taxation, * * * that might be reason enough to render it suspect. But since it does not, it would be perverse, simply for the sake of avoiding double taxation to require California to give up one allocation method that sometimes results in double taxation in favor of another allocation method that also sometimes results in double taxation.

*Id.* 463 U.S. at 192–93, 103 S.Ct. at 2954–55.

sues or violates a clear federal directive. *Container Corp.,* 463 U.S. at 194, 103 S.Ct. at 2955. NCR argues that the federal government cannot take a uniform position on taxation vis-a-vis, foreign nations when the individual states and other political subdivision are pursuing divergent procedures, and illustrates the position the federal government is then placed in by reference to tax treaties which the nation has entered into with other foreign nations. Again, the *Container Corp.* court rejected a similar argument, observing that such tax policy decisions generally lie within the province of the federal executive and legislative branches. *See Container Corp.,* 463 U.S. at 195–96, 103 S.Ct. at 2956.

NCR has provided us with no evidence of any clear federal directive which precludes Minnesota from applying its apportionment formula as it did. Whether any alleged increased tax liability affects federal foreign policy is, as observed by the Supreme Court of the United States, more appropriately addressed by other branches of the government.

Because we conclude the Commissioner correctly interpreted Minn.Stat. § 290.19 (1980), and that his interpretation did not violate either the Due Process or the Commerce Clause of the United States Constitution, we affirm the Tax Court.

KEITH, J., took no part in the consideration or decision of this case.